ABRAHAM DAVIDSON, PLAINTIFF, v. PROVIDENCE WASHINGTON INSURANCE COMPANY, DEFENDANT.

Submitted May term, 1931—Decided October 13, 1931.

1086

Before Justices CAMPBELL, LLOYD and BODINE.

For the rule, *Arthur T. Vanderbilt.*

*Contra, David T. Wilentz (Joseph T. Lieblich,* of counsel)..

PER CURIAM.

The insurance company, defendant, has a rule for new trial in a case wherein a verdict was rendered against it for $3,269.

The reasons urged on the rule are that the jury was misdirected as to the law, that certain requests were improperly refused, and that the verdict was against the weight of the evidence on two vital elements of fact and as to the damages..

The policy was for fire insurance on the plaintiff's bakery.. On April 21st, 1929, a fire occurred which totally destroyed the stock of merchandise, and, as required by the policy, the plaintiff supplied proofs of loss. On August 7th, 1929, the defendant wrote a letter to the plaintiff in which it rejected these proofs on the grounds that the claim was excessive and that the origin of the fire was not correctly stated. The letter added the following: "You are hereby required to furnish in detail an itemized statement of loss supported by bills and invoices setting forth the correct prices and quantities and the amount of loss and damages sustained by you. We hereby notify you that it is the company's desire to conduct an examination under oath at the offices of Arthur T.. Vanderbilt, No. 790 Broad street, Newark, on the afternoon of August 13th, at two P. M., and we respectfully request your presence there at that time."

The plaintiff appeared with his attorney (by arrangement with opposing counsel) the day after the time and place named, the attorney stating, however, that it was voluntary and not in response to the notice, which he deemed insufficient under the terms of the policy. The plaintiff did not there produce the bills, but submitted to examination.

At the end of the examination there was an adjournment to September 5th, 1929, counsel for the company stating that it was for the purpose of having plaintiff bring his bills. On September 5th, the plaintiff did not appear.

Nothing further appears to have taken place and the present action was begun.

At the trial before Judge Ackerman the failure of the plaintiff to furnish the bills, &c., and to subscribe to his statement was proved, and it was contended that this barred the present action under the terms of the policy, which provided that no action should be sustainable until after full compliance with its requirements in this regard. Judge Ackerman charged the jury that the notice to appear and produce was legally insufficient, but left it to the jury to determine whether the actual appearance was in compliance with the notice and a waiver of its defects.

We think he was right. While on examination by Stoffer, in the statement referred to, plaintiff said he was present to be examined in response to the notice under the policies, he was not conducting his own case and his counsel expressly announced to the contrary. As a matter of law the plaintiff could hardly be impaled on an equivocal answer thus obtained, and it was for the jury, and not the court, to say if there was a waiver. As to the notice itself, we think it was insufficient. A proof of loss had been furnished. The company had sixty days in which to pay or demand further proofs, and submission to examination and production of bills. It undertook the latter course and gave the notice specified. The policy required that the insured, "as often as required * * * shall submit to examination and on oath by any person named by the company and subscribe the same, and shall produce for examination all books of account, bills,

&c., \* \* \* at such place as may be designated \* \* \* and permit copies to be made." The notice was not in literal compliance with this provision, and we think, therefore, on the legal phases of the case the court was right, but the verdict was against the weight of the evidence as to waiver and on the merits of the claim.

It seems clear to us that the plaintiff as a matter of fact understood the notice to be in pursuance of the company's right under the policy, and that he and his counsel were attempting to comply with it in order to protect themselves against a possible interpretation that the notice was not defective. The plaintiff was produced at the time and place designated and the company's counsel at the inception of the examination said he was examining plaintiff pursuant to a demand for examination under oath under the provisions of the policy and the plaintiff on the stand so admitted. To this, however, plaintiff's counsel replied that no proper demand had been made but that plaintiff was there voluntarily to assist the company.

In fairness when this assertion was made by defendant's counsel, the plaintiff should have stood on his rights and waited for a proper notice, but appearing in apparent compliance with the notice, the jury should have found a waiver.

We think also that the failure to produce the bills is a serious indictment of the integrity of the claim. Properly or improperly demanded, plaintiff and his attorney knew they were desired and professed to be there to assist the company. The failure to produce under such circumstances gives rise to a strong inference that they would not substantiate the claims. When to this is added the disclaimer of all knowledge of the plaintiff as to his stock of goods in the statement as compared to his fulsome testimony to the contrary at the trial, we think the case should be submitted to another jury.

The rule will be made absolute.