63 N.J. Super. 255 (1960)
164 A.2d 374
LAWRENCE E. CASEY, AND UNION PRINTERS LEAGUE OF NEW JERSEY, PLAINTIFFS,
v.
RAYMOND MALE, COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Essex County.
Heard September 9, 1960.
Decided September 28, 1960.
*257 Mr. Thomas L. Parsonnet appeared for plaintiffs (Messrs. Parsonnet, Weitzman & Oransky, attorneys).
Mr. Stephen F. Lichtenstein, Deputy Attorney General, appeared for defendant (Mr. David D. Furman, Attorney General, attorney).
Mr. John H. Yauch, appeared for Publishers Bureau of New Jersey, Inc. and New Jersey Press Association on Application to Appear Amicus Curiae (Messrs. Gilhooly, Yauch & Fagan, attorneys).
WAUGH, J.S.C.
This is an action in lieu of prerogative writ in the nature of mandamus. Plaintiffs seek an order requiring the defendant, the Commissioner of Labor and Industry, to enforce the Factory Safety Laws, R.S. 34:6-1 et seq., with regard to all newspaper publishing plants in the State. The position of the plaintiffs is that the act applies to all newspapers or, in the alternative, to those which produce and sell matrices and photo engravings. Generally, it is the position of the Attorney General, appearing for the defendant, that the act applies only to factories where goods are manufactured; and that newspaper plants which do not engage in manufacturing do not come within the purview of the chapter.
Application was made at pretrial, pursuant to proper notice of motion, on behalf of Publishers Bureau of New Jersey and the New Jersey Press Association, for leave to appear as amicus curiae in the action "in support of the defense of the defendant, Raymond Male."
"Publishers Bureau of New Jersey, Inc. and the New Jersey Press Association are vitally interested in maintaining that the aforesaid laws are not applicable to newspaper publishers, in that application of the aforesaid laws to newspaper publishers would work particular hardship on said newspaper publishers due to the unique nature of the newspaper publishing business."
*258 The application for leave to appear amicus curiae is opposed by the plaintiff. The Attorney General takes no position on the application.
As the origins of the custom of appearances of amici curiae are obscure in the English Law, research meets with equal obscurity as to the origins and nature of the practice in New Jersey.
Historically, Bouvier tells us that the practice of using amicus curiae cannot be traced to its origin but is immemorial in the Common Law of England. It is apparently an evolutionary product of the Roman custom of employing advisors to the Judex and the use of amici consilliare to advise and suggest to the advocates. 1 Bouv. Law Dict., Rawle's Third Revision, p. 188. The custom as originally practiced in the English system embraced only barristers or counsellors, but by virtue of the enactment of the Statute 4 Hen. IV (1403), the applicability of the custom was extended to "bystanders." Bouvier's Law Dictionary, supra. See also United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857 (1883) for a further reference to the statute.
Notwithstanding the fact that appearances of amici curiae are noted throughout our reported cases, there is very little general discussion of the status, rights, obligations and limitations of amicus curiae. With this in mind, we now turn to a consideration of the present application in the light of all of the foregoing and in the light of the principles hereinafter to be set forth governing this status, its attendant rights, obligations and limitations.
Definitively, amicus curiae has been said to be one who gives information to the court on some matter of law in respect of which the court is doubtful, or who advises of certain facts or circumstances relating to a matter pending for determination. Kemp v. Rubin, 187 Misc. 707, 64 N.Y.S.2d 510 (Sup. Ct. 1946). This status is advisory rather than adversary and one who appears as amicus curiae has no right to except to the ruling of the court or prosecute an appeal. Givens v. Goldstein et al., 52 A.2d 725 (Mun. *259 Ct. App. D.C. 1947); 3 C.J.S. Amicus Curiae § 3 and cases cited therein. The status is not one of right but of privilege resting solely in the sound discretion of the court. As the court stated in The Claveresk, 264 F. 276, at page 279 (2 Cir. 1920), the fact that
"application was made for the privilege of so appearing is of no personal concern to the parties, and the court may grant or refuse the request, according as it deems the proffered information timely and useful or otherwise."
In the same vein, see also In re Perry, 83 Ind. App. 456, 148 N.E. 163 (App. Ct. 1925).
An amicus curiae is not a party to the action, nor can he control the litigation. Klein v. Liss, 43 A.2d 757 (Mun. Ct. App. D.C. 1945). He must accept the case as he finds it with the issues as framed. Kemp v. Rubin, supra.
As indicated above, the application by way of notice of motion recites that the petitioners seek leave to appear "in support of the defense of the defendant, Raymond Male." Taking the clear import of these words, it appears that the role which they desire to assume is that of advocate and not of advisor. A further reading of this cited language taken together with the quoted portion of the accompanying affidavit set forth at the outset of this opinion sufficiently discloses that the petitioners' position can only be inconsistent with the impartiality which clothes amicus curiae. Where a petitioner's attitude toward the litigation is patently partisan, he should not be allowed to appear as amicus curiae. Central Hanover Bank & Trust Co. v. Saranac River Power Corporation, 243 App. Div. 843, 278 N.Y.S. 203 (1935). 300 P. 816, 75 A.L.R. 661 (Sup. Ct. 1931) (construction
Amici curiae have been granted leave to appear in cases state issued bond script). So also a petition has been denied of a section of the Civil Code relating to marriage); Robinson v. Lee, 122 F. 1010 (C.C.D.S.C. 1903), affirmed 196 U.S. 64, 25 S.Ct. 180, 49 L.Ed. 388 (1904) (validity of of general public interest. Marshall v. Marshall, 212 Cal. 736, *260 where the parties were adequately represented by counsel and the public interest adequately protected.
In United States v. General Electric Co., 95 F. Supp. 165 (D.C.N.J. 1950) an action was brought by the United States under the anti-trust laws. Several of the defendant's competitors petitioned for leave to appear as parties or amici curiae, stating that their businesses would be affected by the terms of any order to be entered, that the government did not adequately represent their interests, and that they could be of assistance to the court in entering an order to protect the public.
The court denied the application, stating that under the intendment of the anti-trust laws the government was charged with the responsibility of protecting the public interest and that there had been no showing that counsel could not discharge that obligation.
Although it is clear that the rationale of the anti-trust cases is not strictly applicable here, inasmuch as Congress has decreed that the government is chargeable with the protection of the public interest in cases where it is a party and may also be so chargeable in private litigation (see A.B. Dick Co. v. Marr, 197 F.2d 498 (2 Cir. 1952), certiorari denied 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680, rehearing denied 344 U.S. 905, 73 S.Ct. 282, 97 L.Ed. 699, and Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946), rehearing denied 329 U.S. 823, 67 S.Ct. 24, 91 L.Ed. 700), it would seem that adequacy of representation is one of the yardsticks which can be used to measure whether or not the court's discretion should be exercised in the application now pending. In this regard, it should be noted with more than passing interest that in his brief counsel for the applicants states that he feels somewhat presumptuous in strongly suggesting that he be allowed to aid the court and the Attorney General. Suffice it to say that there can be no doubt that the Attorney General is well qualified to undertake the defense of this action.
*261 It is also conceded that a determination in this cause would not be binding on amicus curiae. Cory Corporation v. Sauber, 267 F.2d 802 (7 Cir. 1959). And there is no application for leave to intervene. Whether or not the Publishers Bureau of New Jersey, Inc. and the New Jersey Press Association have sufficient "interest in the proceedings, either individually or as a representative of a class," so as to permit intervention, the court is not called upon to decide. But see New Jersey Bankers Ass'n. v. Van Riper, 1 N.J. 193 (1948).
In support of their position, petitioners have cited the case of Gundaker Central Motors v. Gassert, 23 N.J. 71 (1956) (where the court was considering the constitutionality of a Sunday closing statute) wherein counsel (who are also counsel for the petitioners here) were granted leave to file a brief before the Supreme Court as amicus curiae which brief supported the position of the Director of the Division of Motor Vehicles (23 N.J., at p. 77). This fact does not appear to amount to a holding by inference that amicus curiae may actively support the defense of a party to the suit. The court notes in passing that in Two Guys from Harrison, Inc. v. Furman, 58 N.J. Super. 313 (Law Div. 1959), modified 32 N.J. 199 (1960), only intervention was allowed in the Law Division, but that there were two appearances amicus curiae in the Supreme Court.
I, therefore, conclude that the petitioners' attitude toward the litigation is patently partisan, and that any interest they may have in the subject matter of the action will be adequately protected by the defense of the defendant. Accordingly, the application for leave to appear amicus curiae should be denied.